# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
JOSHUA ESPINAL,                                     :
:        Case No.: 6:25-cv-747
:
:
Plaintiff, v.                          :
:
BAGEL BARN CAFE & DELI ON                           :
WHEELS LLC,                                          :
:
Defendant.                             :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>COMPLAINT</u>

1.   Plaintiff JOSHUA ESPINAL, (hereinafter "Plaintiff" or "ESPINAL") asserts the following

claims against Defendant BAGEL BARN CAFE & DELI ON WHEELS, LLC, (hereinafter

"BAGEL BARN CAFE & DELI ON WHEELS" or "Defendant"), a Florida Limited Liability

Company, as follows.

2.   Plaintiff is a visually-impaired and legally blind person who requires screen-reading software

to read website content using his computer. Plaintiff uses the terms "blind" or "visually-

impaired" to refer to all people with visual impairments who meet the legal definition of

blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

Some blind people who meet this definition have limited vision. Others have no vision.

3.   Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United

States are visually impaired, including 2.0 million who are blind.

4.   Plaintiff brings this civil rights action against Defendant for its failure to design, construct,

maintain, and operate its website to be fully accessible to and independently usable by Plaintiff. Defendant's denial of full and equal access to its website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.    Defendant, BAGEL BARN CAFE & DELI ON WHEELS, LLC, operates the Bagelbarncafedeli.com, an online platform representing U.S.-based cafés.  This website constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods and services including breakfast, lunch, and dinner options, bagels, fresh salads, burgers, catering services for events and gatherings, as well as online delivery options, which Defendant offers in connection with their physical locations. Yet, Bagelbarncafedeli.com contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to enjoy and learn about the services at Bagelbarncafedeli.com prior to entering Defendant's physical location.

6.    Consumers may order Defendant's products and access other content and services at https://bagelbarncafedeli.com/, the website Defendant owns, operates, and controls. Another function of the website is to provide the public with information on BAGEL BARN CAFE & DELI ON WHEELS' locations, hours of operation, and contact details. The website also allows users to place online orders, choose between pickup and delivery options, schedule orders, choose required and optional selections for menu items, add special instructions for selected items, submit a catering request form, explore menus for each location, contact the restaurant via an online form, and discover the restaurant's social media links.

7.    Congress provided a clear and national mandate for the elimination of discrimination against

individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

8.    Because Defendant's website, https://bagelbarncafedeli.com/ (the "Website"), is not equally accessible to blind and visually impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

9.    The blind has an even greater need than the sighted to have access to various websites in order to compare merchandise, benefits and prices, to get more information about the companies, their locations and hours of operation. The lack of an accessible website deters blind people from visiting Defendant's physical locations and enjoying the unique services that it provides to the public.

10.    By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et*

*seq.*

12. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize the subject Website within this Judicial District.

13. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Middle District of Florida that caused injury and violated rights the ADA prescribes to Plaintiff. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Volusia County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

14. The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

15. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

16. This lawsuit is aimed at providing legally blind users like the Plaintiff a full and equal experience.

## **THE PARTIES**

17. Plaintiff JOSHUA ESPINAL, at all relevant times, is and was a resident of Volusia County.

18. Plaintiff is a blind, visually-impaired handicapped person suffering from Traction retinal

detachment, Neovascular Glaucoma, and ocular complications caused by Diabetes type I, and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

19.    Defendant is, and at all relevant times was, doing business in this jurisdiction.

20.    Defendant BAGEL BARN CAFE & DELI ON WHEELS, LLC, is and was, at all relevant times herein, a Florida Limited Liability Company with its principal place of business located at 6281 Woodhaven Village Drive, Port Orange, FL 32128. Defendant operates the Bagelbarncafedeli.com online platform and advertises, markets, and operates in the State of Florida and throughout the United States.

21.    Defendant's Website, and its goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

## STANDING

22.    Plaintiff JOSHUA ESPINAL is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

23.    BAGEL BARN CAFE & DELI ON WHEELS, LLC provides to the public a website known as Bagelbarncafedeli.com, which provides consumers access to an array of goods and services including breakfast, lunch, and dinner options, bagels, fresh salads, burgers, catering services for events and gatherings, as well as online delivery options. Consumers across the United States use Defendant's website to find the information about café locations and hours of operation, place online orders, arrange pickup and delivery orders, choose required and optional selections for menu items, add special instructions for selected dishes, submit a

catering request form, explore menus for each location, contact the restaurant via an online form, and discover the restaurant's social media links.

24.    Plaintiff has been denied the full enjoyment of the facilities, goods and services of Bagelbarncafedeli.com, as well as deprived of the opportunity to enjoy the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Bagelbarncafedeli.com.

25.    Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus, among other things, unable to: learn about café locations, hours and contact information, determine prices and other information from the Website.

26.    On or about April 11, 2025, while planning to visit New Smyrna Beach, Plaintiff decided to conduct a Google search for cafés in the area. Thus, looking for a place popular for its fresh and flavorful wraps and bagels, he discovered the Defendant`s website, Bagelbarncafedeli.com. Upon entering the website, he encountered multiple accessibility issues that made navigation inefficient. When Plaintiff pressed the "Order Now & Pick Up" link, there was no announcement that the external ordering platform would be opened in a new window. Additionally, on the order page, Plaintiff was frustrated by multiple improper headings. When the visually impaired user tried to add the desired item to the cart, a message indicating that the menu item was out of stock appeared on the screen. However, this message was not announced by the screen reader, leaving Plaintiff confused as to why he could not proceed with the checkout process. As a result, Plaintiff was unable to complete the order on Defendant's website. Nevertheless, he is still interested in visiting Defendant's café at 636 East 3rd Avenue, Unit 9, New Smyrna Beach, FL 32169, when the accessibility barriers are fixed

on the website and he can place a pick-up order for his desired dishes.

27.     Unfortunately, he was unable to complete an online order due to the inaccessibility of Defendant's Website.

28.     Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of making an online order from the Website.

29.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated and humiliated and gave him a sense of isolation and segregation as his being unable to participate in the same online experience, with the same access to sales, services, discounts and promotions, as provided at the Website and for use in the physical locations as the non-visually disabled public.

30.     The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers.

31.     These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because: Plaintiff was unable to find the locations and hours of operation of Defendant's locations on its Website and other important information, preventing Plaintiff from visiting the locations to take advantage of the services that it provides to the public.

32.     Plaintiff has been, and in absence of an injunction will continue to be injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

33.     Because of Defendant's denial of full and equal access to and enjoyment of the good, benefits and services of the Website, Plaintiff has suffered an injury in fact due to his inability of making

an online order, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

34.    Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to make an online order on the Website.

## NATURE OF ACTION

35.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

36.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

37.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

38. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

39. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

40. Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

  a. A text equivalent for every non-text element is not provided;

  b. Title frames with text are not provided for identification and navigation;

  c. Equivalent text is not provided when using scripts;

  d. Forms with the same information and functionality as for sighted persons are not provided;

  e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

  f. Text cannot be resized without assistive technology up to 200% without losing content or functionality;

  g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

  h. Web pages do not have titles that describe the topic or purpose;

  i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.  The default human language of each web page cannot be programmatically determined;

l.  When a component receives focus, it may initiate a change in context;

m.  Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.  Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.  In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.  Inaccessible Portable Document Format (PDFs); and,

q.  The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

41.  Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web- based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the Website to remain accessible, the Website must be reviewed on a periodic basis using both automated accessibility screening tools and end user

testing by disabled individuals.

## **STATEMENT OF FACTS**

42.     Defendant is a company that owns and operates https://www.bagelbarncafedeli.com/ (its "Website"), offering features which should allow all consumers to access the goods and services offered by Defendant. This website forms a nexus between online services and the Defendants' brick and mortar place of public accommodation.

43.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on April 11, 2025, using a screen-reader.

44.     On or about April 11, 2025, while planning to visit New Smyrna Beach, Plaintiff decided to conduct a Google search for cafés in the area. Thus, looking for a place popular for its fresh and flavorful wraps and bagels, he discovered the Defendant`s website, Bagelbarncafedeli.com. Upon entering the website, he encountered multiple accessibility issues that made navigation inefficient. When Plaintiff pressed the "Order Now & Pick Up" link, there was no announcement that the external ordering platform would be opened in a new window. Additionally, on the order page, Plaintiff was frustrated by multiple improper headings. When the visually impaired user tried to add the desired item to the cart, a message indicating that the menu item was out of stock appeared on the screen. However, this message was not announced by the screen reader, leaving Plaintiff confused as to why he could not proceed with the checkout process. As a result, Plaintiff was unable to complete the order on Defendant's website. Nevertheless, he is still interested in visiting Defendant's café at 636 East

3rd Avenue, Unit 9, New Smyrna Beach, FL 32169, when the accessibility barriers are fixed on the website and he can place a pick-up order for his desired dishes.

45.  The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen reading software. These barriers include but are not limited to: ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, and inaccessible drop-down menus.

46.  Among other accessibility issues encountered by Plaintiff when visiting the Defendant`s website are the following:

a.  Interactive elements were not programmatically associated with their label elements. Plaintiff did not understand the purpose of the interactive element on the page as its name was not announced;

b.  Plaintiff was unable to activate several interactive elements using "enter" or "spacebar" keys. The only mechanism for viewing items was the mouse;

c.  Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose;

d.  Plaintiff encountered interactive images that were used as links that did not describe the content of the link target. There were no details what kind of information can be found on the destination page;

e.  Plaintiff encountered links that were incorrectly implemented, their destination was the same page. As a result, the legally blind user, attempting to find "breakfast, lunch, dinner" options, was redirected to the same page;

f. Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

g. In an attempt to access an element, Plaintiff did not receive any relevant information about the link target, such as the type of the opened file (PDF). Thus, Plaintiff was confused when the context of the page suddenly changed and was unable to navigate through it using the keyboard;

h. Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

i. Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

j. Non-interactive elements were marked up as keyboard focusable elements (tabindex="0" was applied), and Plaintiff could not determine the purpose of the elements, since they were not actually interactive (did not have appropriate "role" attribute). Furthermore, tabbing through the additional focusable elements required extra effort and time from Plaintiff to find the content of interest on the website;

k. Plaintiff was not aware of the search suggestions after search term was entered into the Search bar. The status update, such as a brief text message about search suggestions, was not provided even though the content of the page was updated and suggested menu items were displayed. Without appropriate status message legally blind users do not know that search suggestions appeared on the screen;

l. Focusable components in the menus, provided in PDF format, do not receive focus in a sequence that preserves meaning and operability.

47.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do.

48.    Plaintiff intends to visit the Website in the near future if it is made accessible.

49.    It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff has been and is still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

50.    Due to the inaccessibility of Defendant's Website, Plaintiff, who needs a screen-reader, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on its website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website.

51.    If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

52.    Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

53.    Because simple compliance with the WCAG 2.2 Guidelines would provide Plaintiff with equal

access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a. Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,

c. Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff.

54. Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

55. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . . 42 U.S.C. § 12188(a)(2).

56. Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.2 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.   Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.2 guidelines;

b.   Regularly check the accessibility of the Website under the WCAG 2.2 guidelines;

c.   Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.2 guidelines; and,

d.   Develop an accessibility policy that is clearly disclosed on Defendant's websites, with contact information for users to report accessibility- related problems.

57.   Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

58.   Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their website equally accessible to visually impaired customers.

59.   Without injunctive relief, Plaintiff will continue to be unable to independently use the Website, violating his rights.

## FIRST CAUSE OF ACTION  VIOLATIONS OF THE ADA, 42 U.S.C. § 12182 *et seq.*

60.   Plaintiff repeats the allegations contained in the above paragraphs as if set forth herein.

61.   Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
42 U.S.C. § 12182(a).

62.    Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

63.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

64.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

65.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42  U.S.C. § 12182(b)(2)(A)(ii)-(iii).

66.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations

promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF

68.    Plaintiff repeats the allegations contained in the above as if set forth herein.

69.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.

70.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the laws of Florida;

b.  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, and the laws of Florida;

d.  Payment of nominal damages;

e.  Pre- and post-judgment interest;

f.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

g.  Such other and further relief as this Court deems just and proper.

Dated: April 29, 2025

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*

**/s/ *Andrew Schertzer***
By: Andrew Schertzer, Esq.
Fla. Bar No.: 1044359
68-29 Main Street,
Flushing, NY 11367
Tel: (248)-386-4508
Email: aschertzer@ealg.law